UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT EARL WHITE,

           Petitioner,

                                     CASE NO. 2:20-CV-12051
v.                                   HONORABLE SEAN F. COX

BRYAN MORRISON,

           Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.    Introduction**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Robert Earl White ("Petitioner" or "REW") was convicted of assault with intent to commit murder ("AWIM"), Mich. Comp. Laws § 750.83, felon in possession of a firearm ("felon in possession"), Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 769.227b, following a joint jury trial with his co-defendant and sister, Mary Elaine White ("MEW"), in the Wayne County Circuit Court. Petitioner was sentenced, as a second habitual offender, Mich. Comp. Laws § 769.10, to 15 to 25 years imprisonment on the assault conviction, a concurrent term of 2 to 5 years imprisonment on the felon in possession conviction, and a consecutive term of 2 years imprisonment on the felony firearm conviction in 2015. In his pleadings, he raises claims concerning the sufficiency of the evidence, the validity of his sentence, newly-discovered evidence and his actual innocence, and the effectiveness of trial and appellate counsel. For the reasons set forth, the Court denies the petition

for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from the non-fatal shooting of his sister's boyfriend, Charles Rooker, at Rooker's home in Detroit, Michigan on September 1, 2014.  The Michigan Court of Appeals described the relevant facts, which are presumed correct on federal habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> The charges and convictions in this case stem from the shooting of [Mary Elaine White] MEW's boyfriend. There was evidence that MEW's boyfriend hit MEW in the face after an argument outside their house, that MEW then left the scene, that MEW returned to the house within about five to ten minutes, that [Robert Earl White] REW, who is MEW's brother, also arrived at the house, that the boyfriend locked himself inside the house and stood by the door as both defendants stood outside the door verbalizing their intent to harm the boyfriend, that the boyfriend started to call 911, and that, with MEW's boisterous approval, REW then fired numerous gunshots through the door, striking the boyfriend.

*People v. White*, No. 327419, 2016 WL 6995042, *1 (Mich. Ct. App. Nov. 29, 2016) (unpublished).

Following his convictions and sentencing, Petitioner filed a motion for re-sentencing with the state trial court challenging the scoring of three offense variables and contending that he should be re-sentenced based upon the Michigan Supreme Court's ruling in *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015) (ruling that Michigan's mandatory sentencing guidelines violated the Sixth Amendment and making them advisory).  The trial court denied the motion finding that the scoring of two of the disputed offense variables was supported by the jury's verdict and that even if the guidelines were lowered as to the third offense variable, the court would not impose a different sentence.  10/16/15 Mot. Hrg. Tr., ECF No. 7-15, PageID.994-995.

Petitioner then filed an appeal of right with the Michigan Court of Appeals raising claims concerning the sufficiency of the evidence and the validity of his sentence.  The court denied relief on those claims and affirmed his convictions and sentences.  *White*, 2016 WL 6995042 at *4-5. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *People v. White*, 500 Mich. 1022, 896 N.W.2d 438 (2017).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising claims concerning newly-discovered evidence and his actual innocence and the effectiveness of trial and appellate counsel.  The trial court denied relief on those claims finding that he failed to establish that he was entitled to relief based on newly-discovered evidence and he failed to establish that he was entitled to relief under Michigan Court Rule 6.508(D).  *People v. White*, No. 14-008075-02-FC (Wayne Co. Cir. Ct. May 7, 2018).  Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure to establish that the trial court erred in denying the motion for relief from judgment.  *People v. White*, No. 346356 (Mich. Ct. App. March 4, 2019).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D).  *People v. White*, 504 Mich. 958, 932 N.W.2d 626 (2019).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.      His conviction should be reversed, and charges ordered dismissed with prejudice, when the prosecution failed to present sufficient evidence to prove his identity as the perpetrator of the offense, violating his rights to a fair trial and due process under the Fourth, Fifth, and Fourteenth Amend. to the U.S. Const. and Michigan Const. Art. 1 §§17, 20.

II.     He is entitled to a remand because the scoring of the offense variables occurred through improper judicial fact-finding, and the 15-year minimum sentence imposed is not reasonable violating his rights to a fair trial and due

process under the Fourth, Fifth, and Fourteenth Amend. to the U.S. Const. and Michigan Const. Art. 1 §§ 17, 20.

III.     His new evidence consisting of an affidavit exonerating him of the crime proves actual innocence and the lower court's summary rejection of the affidavit and issue of actual innocence violated his rights to a fair trial and due process under the Fourth, Fifth, and Fourteenth Amend. to the U.S. Const. and Michigan Const. 1963, Art. 1 §§ 17, 20.

IV.     He was denied effective assistance of trial counsel when counsel failed to investigate, interview, or subpoena alibi witnesses violating his rights to a fair trial and due process under the Fourth, Fifth, Sixth, and Fourteenth Amend. to the U.S. Const. and Michigan Const. Art. 1 §§ 17, 20.

V.     He was denied effective assistance of trial counsel when counsel failed to investigate and interview any prosecution witnesses violating his rights to a fair trial and due process under the Fourth, Fifth, Sixth, and Fourteenth Amend. to the U.S. Const. and Michigan Const. Art. 1 §§ 17, 20.

VI.     He was denied effective assistance of appellate counsel when counsel failed to raise meritorious issues on direct appeal violating his rights to a fair trial and due process under the Fourth, Fifth, Sixth, and Fourteenth Amend. to the U.S. Const. and Michigan Const. Art. 1 §§ 17, 20.

ECF No. 1.  Respondent filed an answer to the habeas petition contending that it should be denied because certain claims are procedurally defaulted and all of the claims lack merit.  ECF No. 8.

## III.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

4

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-521 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

5

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.; *see also White v. Woodall*, 572 U.S. 415, 419-420 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state

court to decline to apply a specific legal rule that has not been squarely established by this Court")

(quoting *Wright v. Van Patten*, 552 U.S. 120, 125-126 (2008) (per curiam)); *Lockyer*, 538 U.S. at

71-72.  Section 2254(d) "does not require a state court to give reasons before its decision can be

deemed to have been 'adjudicated on the merits.'"  *Harrington*, 562 U.S. at 100.  Furthermore, it

"does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of

[Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision

contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court

precedent.  Thus, "circuit precedent does not constitute 'clearly established Federal law, as

determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief

under AEDPA."  *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v.

Smith*, 574 U.S. 1, 2 (2014) (per curiam).  The decisions of lower federal courts may be useful in

assessing the reasonableness of the state court's decision.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th

Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203

F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review.

28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing

evidence.  *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998).  Habeas review is also "limited

to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

IV.     **Discussion**

A.      **Procedural Default**

As an initial matter, Respondent contends that certain habeas claims are barred by

7

procedural default. The Court declines to address this defense. While a state procedural default can, and often should, provide sufficient reason for a federal court to deny habeas relief, *see Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) ("Comity and federalism demand nothing less."), procedural default is not a jurisdictional bar to habeas review. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issue is complex and intertwined with the merits of the ineffective assistance of counsel claims, and the substantive claims are more readily decided on the merits. Accordingly, the Court shall proceed to the merits of the claims.

### B. Merits

#### 1. Insufficient Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence, namely of his identity and his intent, to support his convictions. Respondent contends that this claim is procedurally defaulted in part and that it lacks merit.

The Federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she]

8

is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

A federal court views this standard through the framework of 28 U.S.C. § 2254(d).  *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial."  *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).  "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim."  *Matthews*, 319 F.3d at 788-789.

Under Michigan law, the elements of AWIM are:  (1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder.  *See Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (citing Michigan law);  *People v. Ericksen*, 288 Mich. App. 192, 195, 793 N.W.2d 120 (2010); Mich. Comp. Laws § 750.83.  The intent to kill may be proven by "the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to

9

produce death, [the defendant's] conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made." *People v. Taylor*, 422 Mich. 554, 568; 375 N.W.2d 1 (1985) (citation and quotation marks omitted). The use of a lethal weapon supports an inference of an intent to kill. *People v. Dumas*, 454 Mich. 390, 403, 563 N.W.2d 31 (1997); *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975).

The elements of felon in possession are: (1) the defendant was convicted of a felony, (2) the defendant possessed a firearm, and (3) at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *People v. Perkins*, 262 Mich. App. 267, 270, 686 N.W.2d 237 (2004), *aff 'd* 473 Mich. 626, 703 N.W.2d 448 (2005); Mich. Comp. Laws § 750.224f. The elements of felony firearm are: (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense. *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (quoting *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)); Mich. Comp. Laws § 750.227b.

As with any offense, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409, *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or state of mind. *Dumas*, 454 Mich. at 398; *see also People v. Nowack*, 462 Mich. 392, 402-403,

614 N.W.2d 78 (2000).

Petitioner raised this claim on direct appeal.  The Michigan Court of Appeals applied the

*Strickland* standard and denied relief.  The court explained in relevant part:

> REW contends that his convictions must be reversed because there was insufficient evidence of his identity as the perpetrator and of an intent to kill. We disagree. "[I]dentity is an element of every offense," *People v. Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), and an intent to kill is an essential element of AWIM, *People v. Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). REW maintains that MEW's boyfriend was the only person who provided identification testimony and that his testimony was not credible. REW claims that the boyfriend could not have known who the shooter was because he was standing behind the door of the home when the shots rang out. The boyfriend, however, testified that he saw REW exit his vehicle with a gun in his hand and that he observed REW shoot out the top window. REW is also incorrect that the boyfriend was the only witness who provided identification testimony. There was an eyewitness who described the shooter's vehicle as a red truck with a white door, and REW was arrested in a red Suburban with a white door. Another eyewitness saw the shooter get into an SUV or van. Moreover, contrary to REW's assertion, this witness did not describe the shooter as being short. Rather, she testified that she referred to the shooter as the "short guy" and the other man on the porch as the "tall guy" because "one was basically shorter than the other one." Thus, her testimony did not actually describe the height of the shooter. And the other eyewitness described the shooter as tall and slender, fitting REW's description. Finally, although REW claims that there were inconsistencies between the boyfriend's testimony and his earlier statements and testimony, "[t]he credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v. Jackson*, 292 Mich App 583, 587–588; 808 NW2d 541 (2011) (citation and quotation marks omitted). Thus, there was sufficient evidence identifying REW as the shooter.
>
> We also reject REW's argument that there was insufficient evidence showing an intent to kill. REW makes this claim on the basis that there was a lack of evidence indicating that he knew that the boyfriend was directly behind the door when he fired his weapon. The boyfriend testified that MEW was trying to unlock the door and the boyfriend relocked it, and he also told defendants that he was calling the police. Given his relocking of the door and his statement to defendants, the jury could reasonably have found that defendants were aware that the boyfriend was within close proximity to the door. And REW's intent to kill can be inferred by his use of a deadly weapon, *Henderson*, 306 Mich App at 11, which he fired multiple times into an occupied home. REW argues that because there was no evidence of "bad blood" between himself and the boyfriend, there was no evidence of motive

that might supply a basis to infer an intent to kill. "Minimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with flight and lying, which may reflect a consciousness of guilt." *Id*. While we note that motive is not an element of the crime that needed to be established, the boyfriend's earlier assault of REW's sibling, MEW, provided motivation for him to kill the boyfriend. REW's flight after the shooting also reflected a consciousness of guilt. Accordingly, there was sufficient evidence of REW's intent to kill.

*White*, 2016 WL 6995042 at *4-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The victim, Charles Rooker, identified Petitioner as the shooter, testifying that he had a prior physical dispute with Petitioner's sister, that he saw Petitioner drive up to his house, exit his vehicle, and approach his house armed with a gun, that Petitioner and his sister (who arrived separately) were yelling and threatening him, that several shots were fired through his windows and the front door striking him, that he saw Petitioner shoot out a top window, and that he saw Petitioner (and his sister) flee the scene. 4/2/15 Trial Tr., ECF No. 7-11, PageID.619-621, 627-642, 647-648; 4/7/15 Trial Tr., ECF No. 7-12, PageID.791. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). Additionally, a neighborhood witness gave a description of the shooter's vehicle (a red SUV with a white door) that matched Petitioner's vehicle, 4/1/15 Trial Tr., ECF No. 7-10, PageID.435-436, 441, and gave a description of the shooter that matched Petitioner (e.g., slim medium-complexion black man in his 40s). *Id*. at PageID.464-465. Such testimony provided sufficient evidence of Petitioner's identity as the shooter.

The prosecution also presented testimony that Petitioner was armed with a gun, 4/1/15 Trial Tr., ECF No. 7-10, PageID.428-429; 4/2/15 Trial Tr., ECF No. 7-11, PageID.629-630, that he sought out the victim following the victim's dispute with his sister, 4/2/15 Trial Tr., ECF No. 7-11,

12

PageID.619-621, that he fired multiple shots into the door of an occupied dwelling, ECF No. 7-10, PageID.428, 432-433; 4/2/15 Trial Tr., ECF No. 7-11, PageID.638-639, and that he fled the scene. 4/1/15 Trial Tr., ECF No. 7-10, PageID.435-436; 4/2/15 Trial Tr., ECF No. 7-11, PageID.641-642. Such testimony provided sufficient evidence of Petitioner's intent to kill. *See, e.g., Steele v. Withrow*, 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001) (use of a lethal weapon supports an inference of intent to kill); *Scott v. Elo*, 302 F.3d 598, 603 (6th Cir. 2002) (evidence of prior dispute with the victim supports a reasonable inference that shooting was premeditated); *Steele*, 157 F. Supp. 2d at 740 (same involving sister); *Thomas v. McKee*, 571 F. App'x 403, 407 (6th Cir. 2014) (evidence that petitioner fired multiple gunshots shows intent to kill); *Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004) (attempt to flee supports a finding of premeditation and deliberation).

Petitioner challenges the jury's evaluation of the testimony and evidence presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-970 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

### 2. Sentencing Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court improperly relied upon judicial fact-finding in scoring the offense variables and imposing his sentences in

violation of the Sixth Amendment.  Respondent contends that this claim lacks merit.

A sentence within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999); *see also Hutto v. Davis*, 454 U.S. 370, 373-374 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature). Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.  *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).  Petitioner's sentences are within the statutory maximum sentences for a second habitual offender.  *See* Mich. Comp. Laws §§ 750.83 (authorizing a maximum sentence of life imprisonment); 750.224f (authorizing a maximum sentence of five years imprisonment), 750.227b (authorizing a consecutive sentence of two years imprisonment); 769.10 (authorizing enhanced sentences for second habitual offenders).  Consequently, his sentences are insulated from habeas review absent a federal constitutional violation.

Petitioner raised this claim on direct appeal.  The Michigan Court of Appeals denied relief. The court explained:

> Finally, REW presents a *Lockridge* argument and requests a *Crosby* remand. REW filed a motion in the trial court for resentencing under *Lockridge* after its release, and the court conducted a hearing on the motion, entertaining the parties' briefs and arguments. Although the trial court did not articulate its decision in the precise terms set forth in *Lockridge*, the court made absolutely clear that the sentences imposed on REW would not have been any different under the principles announced in *Lockridge*. Therefore, REW was effectively afforded a *Crosby* remand, and we see no reason to return the matter back to the trial court for further review.

*White*, 2016 WL 6995042 at *5.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an

14

unreasonable application of federal law or the facts.  This sentencing claim arises from the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004); and *Alleyne v. United States*, 570 U.S. 99 (2013).  In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U .S. at 490.  In *Blakely*, the Supreme Court clarified "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  *Blakely*, 542 U.S. at 303.  In *Alleyne*, the Supreme Court extended *Apprendi* to mandatory minimum sentences, ruling that any fact that increases a mandatory minimum sentence is an "element" of the offense that must be submitted to the jury and proven beyond a reasonable doubt.  *Alleyne*, 570 U.S. at 111-12.

In *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines violate the Sixth Amendment because the guidelines "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that *mandatorily* increase the floor of the guidelines minimum sentence range."  *Lockridge*, 498 Mich. at 364.  The court thus struck the mandatory portions of the guidelines made the guidelines advisory only.  *Id*. at 391-392.  The remedy under *Lockridge* is a remand for the trial court to determine whether it would impose a materially different sentence absent the mandatory guidelines.  *Id*. at 395-397 (citing *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005)).  If the answer is yes, re-sentencing is required.  *Id.*

The United States Court of Appeals for the Sixth Circuit has since issued a decision

agreeing with *Lockridge* and ruling that *Alleyne* clearly established that Michigan's pre-*Lockridge* mandatory minimum sentencing guidelines scheme violated the Sixth Amendment. *Robinson v. Woods*, 901 F.3d 710, 716-718 (6th Cir. 2018). The Sixth Circuit explained that "[a]t bottom, Michigan's sentencing regime violated *Alleyne's* prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id.* at 716. This Court is bound by the Sixth Circuit's decision.

In this case, Petitioner was sentenced on April 24, 2015, after *Alleyne* was decided and before *Lockridge* made Michigan's sentencing guidelines advisory. Consequently, his sentences were imposed in violation of the Sixth Amendment to the extent that any of the offense variables were scored based upon judicially-found facts neither admitted by him nor proven beyond a reasonable doubt. That being said, Petitioner is nonetheless not entitled to relief on this claim. As explained by the Michigan Court of Appeals, Petitioner was effectively afforded a *Crosby* hearing when the trial court denied his motion for re-sentencing and stated that it would not impose a different sentence under the advisory guidelines. The Michigan Court of Appeals' determination was reasonable. "The United States Supreme Court has not clearly established whether a defendant sentenced under an unconstitutional sentencing scheme is entitled to a full re-sentencing or only a *Crosby* hearing." *Morrell v. Wardens*, 12 F.4th 626, 632 (6th Cir. 2021) (citing cases). And the Sixth Circuit has held that "a *Crosby* remand is not contrary to or an unreasonable application of clearly established federal law." *Id.* at 633 (citing *Reign v. Gidley*, 929 F.3d 777, 780-783 (6th Cir. 2019)). Given that Petitioner was effectively afforded a *Crosby* hearing and Petitioner fails to show that re-sentencing is required to protect his rights, there is no additional relief for this Court to grant. Habeas relief is not warranted on this claim.

### 3.      Newly-Discovered Evidence/Actual Innocence Claim

Petitioner next asserts that he is entitled to habeas relief based upon newly-discovered evidence of his actual innocence, namely an affidavit from his nephew, Nicolas White.  Respondent contends that this claim is procedurally defaulted and lacks merit.

Petitioner raised this claim on collateral review.  The state trial court denied relief finding that Petitioner failed to show that he could not have reasonably obtained the evidence sooner or that the evidence would have resulted in a different outcome at trial.  The court also found that the affidavit lacked credibility, conflicted with Petitioner's own statements, and did not exonerate Petitioner.  5/7/18 Wayne Co. Cir. Ct. Op., ECF No. 7-17, PageID.1132-1136.  As noted *supra*, the Michigan appellate courts denied leave to appeal in standard orders.

The state trial court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.[1]  Claims of actual innocence based on newly-discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*.  The Supreme Court has not decided whether freestanding actual innocence claims are cognizable on habeas review. *See House v. Bell*, 547 U.S. 518, 555 (2006) (expressly declining to resolve the issue).  The Sixth Circuit, however, has "repeatedly indicated that such claims are not cognizable" on habeas review. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020 (citing *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir.

___

[1]The Court notes that it would, and does, reach the same result even under a de novo standard of review.

17

2007) (listing cases)).  This Court is bound by the Sixth Circuit's ruling.  Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, as discussed by the trial court, Nicolas White's affidavit does not exonerate Petitioner nor is it particularly credible given that it was signed nearly three years after the shooting and more than two years after the trial.  Such affidavits are suspect and unreliable.  *See, e.g., Schlup*, 513 U.S. at 331; *Freeman v. Trombley*, 483 F. App'x 51, 59-60 (6th Cir. 2012) (discounting credibility of girlfriend's alibi affidavit submitted long after trial).  Such statements are viewed with "a fair degree of skepticism."  *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring); *Harris v. Smith*, No. 2:12-CV-14210, 2013 WL 3873168, *5 (E.D. Mich. July 25, 2013) ("Long delayed statements are viewed with extreme suspicion."); *see also McQuiggan v. Perkins*, 569 U.S. 383, 387 (2013) (stating that a court should consider "unjustifiable delay on a habeas petitioner's part . . . as a factor in determining whether actual innocence has been reliably shown").

Additionally, given the significant evidence of guilt presented at trial, particularly the victim's identification testimony, Petitioner fails to show that the affidavit or any potential testimony by Nicolas White would have affected the outcome.  Nor does Petitioner otherwise establish that he is actually innocent.  His own self-serving assertion of innocence is insufficient to support an actual innocence claim.  A "reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause."  *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (citing cases).  Petitioner's assertion that his habeas claims have merit also does not establish his actual innocence.  *Craig v. White*, 227 F. App'x 480, 481 (6th Cir. 2007).  Habeas relief is not warranted on this claim.

### 4.      Ineffective Assistance of Trial Counsel Claims

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to investigate and call potential alibi witnesses, an employee named James Coleman (aka "International") and Petitioner's wife and son, as well an expert witness on identification, and for failing to investigate and interview prosecution witnesses.  Respondent contends that these claims are procedurally defaulted and lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, a petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair proceeding.  *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  *Id*. at 690.  A reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689.  There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that,

19

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding.   *Id.*   "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner raised these claims claim on collateral review and the state trial court denied relief on procedural grounds finding that Petitioner could have raised his collateral review issues (other than newly-discovered evidence) in propria persona on direct appeal, but failed to do so.  Wayne Co. Cir. Ct. Op., ECF No. 11-17, PageID.1136-1137.  The Michigan appellate courts denied leave to appeal in standard orders.  Given that the state trial court denied relief on procedural grounds without addressing the merits, the Court shall review these claims de novo. *Cone v. Bell*, 556 U.S. 449, 472 (2009); *Haight v. Jordan*, 59 F.4th 817, 831 (6th Cir. 2023).

It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call a known alibi witness can constitute ineffective assistance of counsel, *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004), but counsel is not required to call a witness whose credibility is questionable. *Thurmond v. Carlton*, 489 F. App'x 834, 840 (6th Cir. 2012). The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, Petitioner fails to show that trial counsel was ineffective for failing to investigate or call the potential alibi witnesses. First, as to the employee named James Coleman (aka "International"), Petitioner fails to provide an affidavit or statement from him to show that he would have been willing and able to testify at trial and/or that he would have personally provided testimony favorable to the defense.[2] It is well-settled that conclusory allegations, without

---

[2]To be sure, Petitioner alleges that Coleman took his truck and committed the shooting. Pet. Aff, ECF No. 1, PageID.76. If this were true, it is unlikely that Coleman would admit to such conduct or otherwise testify on Petitioner's behalf.

evidentiary support, are insufficient to warrant federal habeas relief.  *See Workman v. Bell*, 178

F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not

justify habeas relief); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012) (citing

*Workman* and denying habeas relief on conclusory claims); *Washington v. Renico*, 455 F.3d 722,

733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an

evidentiary hearing on habeas review).

Second, as to Petitioner's wife and son, the record indicates that trial counsel was aware of

their potential testimony, *see* Pet. Aff., Wife's Aff., ECF No. 1, PageID.76, 79, but chose not to call

them at trial.  According to Petitioner and his wife, counsel did not have her (or the children) testify

because he thought the prosecution's case was weak and the victim's identification testimony was

not credible.  *Id.*  Counsel thus had strategic reasons for not calling the witnesses and pursued his

strategy through cross-examination and argument at trial.  Trial counsel may also have decided not

to call Petitioner's wife and son (or any of the children) as alibi witnesses due to concerns about

their familial relationship with Petitioner and their credibility.  Such concerns were reasonable.

*See, e.g., Stadler v. Berghuis*, 483 F. App'x 173, 176-177 (6th Cir. 2012) (counsel's decision not

to pursue an alibi defense was reasonable given concerns about family members' credibility); *see*

*also Moore v. Parker*, 425 F.3d 250, 253-254 (6th Cir. 2005) (counsel was not ineffective for

failing to call family members as witnesses where they could not provide an airtight alibi).

Additionally, trial counsel may have reasonably believed that contesting the prosecution's

case and casting doubt on the credibility of the victim and other prosecution witnesses would be

more effective than presenting an alibi defense which could be subject to significant challenge.

*See, e.g., Hale v. Davis*, 512 F. App'x 516, 522 (6th Cir. 2013) (stating that sometimes it may be

"better to try to cast pervasive suspicion of doubt" by challenging the prosecution's case than to "strive to prove a certainty that exonerates").[3]  In fact, the record shows that counsel elicited testimony from a neighborhood witness who observed the incident that he could not identify the shooter, 4/1/15 Trial Tr., ECF No. 7-10, PageID.461, and cross-examined the victim about his credibility and motivations, 4/7/15 Trial Tr., ECF No. 7-12, PageID.781-799.  Counsel also disputed the prosecution witnesses' credibility, cited weaknesses in their testimony, and highlighted the lack of physical evidence linking Petitioner to the crime during closing arguments.  4/7/15 Trial Tr., ECF No. 7-12, PageID.891-899.  The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").  Petitioner fails to show that trial counsel's performance was deficient and/or that he was deprived of a substantial defense.

Petitioner also fails to show that trial counsel was ineffective for failing to investigate and call an expert on witness identification.  A habeas petitioner "does not have a constitutional right to the presentation of expert testimony on the reliability of eyewitness identification." *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001); *see also Perkins v. McKee*, 411 F. App'x 822, 833 (6th

---

[3]The Court has significant doubts about the credibility of the wife's and son's affidavits given their familial relationship to Petitioner, as well as the fact that they did not sign their affidavits until February, 2020, Wife's Aff., Son's Aff., ECF No. 1, PageID.79, 81, more than five years and five months after the shooting and more than four years and ten months after the trial.  The Court also notes that Petitioner did not present his wife's and son's affidavits to the state courts – collateral review ended in 2019 and the affidavits were signed in 2020.  The Court will nonetheless consider the affidavits since Petitioner made the same assertions about the substance of the witnesses' potential testimony on collateral review, he likely no longer has an available remedy to exhaust the issue in the state courts, and the state courts did not adjudicate the ineffective assistance of counsel claims on the merits on collateral review.

Cir. 2011) ("No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment.").  Counsel's decision not to call an identification expert witness was reasonable because the "primary concern expressed in cases discussing the problems with eyewitness identification relates to a witness observing and subsequently identifying a stranger."  *Moss*, 286 F.3d at 862.  The victim in this case, Charles Rooker, knew Petitioner and provided the primary identification testimony.  Counsel also cross-examined Rooker about his relationship with Petitioner and his ability to identify Petitioner.  4/7/15 Trial Tr., ECF No. 7-12, PageID.782-783, 787-792.  Petitioner fails to show that trial counsel erred by failing to investigate and/or call an identification expert witness.

Moreover, "unless [the petitioner] can locate and produce this mythic expert, there can be no cause or prejudice."  *Smith v. Mitchell*, 348 F.3d 177, 209 (6th Cir. 2003).  While Petitioner alleges that an identification expert witness would have provided favorable defense testimony, he offers no expert witness or affidavit in support of this claim.  As discussed, conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief.  *See Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335-36; *Washington*, 455 F.3d at 733.  Petitioner fails to establish that trial counsel erred or that he was prejudiced by counsel's conduct.  *See, e.g., Lacy v. Cheeks*, No. 22-1311, 2022 WL 18542505 at *6 (6th Cir. Aug. 25, 2022) (denying habeas relief on similar claim), *cert. denied*, No. 22-6670, _ U.S._, 2023 WL 2563385 (March 20, 2023).

Lastly, Petitioner fails to show that trial counsel was ineffective for failing to investigate or interview prosecution witnesses.  To the extent that Petitioner broadly asserts that counsel failed to investigate or interview any or all of prosecution witnesses, he fails to show that counsel, in fact,

did not investigate or interview the witnesses or to show why such actions was necessary for his case. For example, counsel may have reasonably determined that he could adequately prepare for trial by reviewing the police reports and the prosecution's discovery file. Petitioner also fails to explain with any specificity who counsel should have interviewed, what information the witnesses would have provided that was not disclosed before or during trial, and/or what undiscovered information would have benefitted his defense at trial. As discussed, conclusory allegations are insufficient to warrant habeas relief. *See Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335-36; *Washington*, 455 F.3d at 733.

The only potential witness that Petitioner specifically names (for the first time on habeas review) is Dennis Beckom who provided a police statement on the day of the shooting, ECF No. 1, PageID.83, but did not testify at trial. Petitioner asserts that counsel should have interviewed Beckom and had him testify because Beckom stated that he believed that the shooter "had braids in his hair going to the back" and Petitioner was allegedly bald at the time of the shooting. Counsel, however, may have reasonably decided not to pursue this witness because he also gave a description of the shooter's vehicle that matched Petitioner's vehicle (a red Suburban with a white door) and described the shooter as a slender black man about six feet tall with a dark complexion, which fit Petitioner's description. Petitioner fails to show that counsel erred. Furthermore, even if counsel was deficient, Petitioner fails to show that he was prejudiced by counsel's conduct given the strength of the victim's identification testimony and the testimony identifying Petitioner's

vehicle at the scene of the shooting.[4] Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

### 5. Ineffective Assistance of Appellate Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise his collateral review claims on direct appeal. Respondent contends that this claim lacks merit.

As discussed *supra*, in order to establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. With regard to appellate counsel, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th

---

[4]To the extent that Petitioner asserts that trial counsel was ineffective for failing to investigate/locate Nicolas White, he is not entitled to relief. While Petitioner states that he told counsel about Nicolas White (his nephew) at the time of trial, he admits that Nicolas White "could not be found until just recently" (in 2017). Pet. Aff., ECF No. 1, PageID.76. Petitioner fails to show what counsel could have done to locate White at the time of trial, particularly given that he could not do so and Nicolas White is his nephew. Additionally, for the reasons stated by the state trial court and this Court relative to Petitioner's newly-discovered evidence claim, Nicolas White's testimony is not particularly credible nor does it exonerate Petitioner. Petitioner fails to show that counsel erred and/or that he was prejudiced by counsel's conduct as required by *Strickland*. Habeas relief is not warranted on this claim.

Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003). In other words, counsel's failure to raise an issue on appeal can only be ineffective assistance "if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Petitioner raised this claim on collateral review and the state trial court denied relief on procedural grounds finding that Petitioner could have raised his collateral review issues (other than newly-discovered evidence) in propria persona on direct appeal. Wayne Co. Cir. Ct. Op., ECF No. 11-17, PageID.1136-1137. The Michigan appellate courts denied leave to appeal in standard orders. Again, given that the state trial court denied relief on procedural grounds without addressing the merits of this claim, the Court shall review the claim de novo. *Cone*, 556 U.S. at 472; *Haight*, 59 F.4th at 831.

Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial issues on direct appeal concerning the sufficiency of the evidence and the validity of his sentence. None of the collateral review claims are "dead-

bang winners" given the Court's denial of relief on those claims – and given the significant evidence of guilt presented at trial. And even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudice by counsel's conduct because, as discussed *supra*, the underlying claims lack merit. Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Habeas relief is not warranted on this claim.

### 6.    State Law Claims

Lastly, Petitioner seems to assert, with respect to the foregoing claims, that he is entitled to habeas relief because his rights under Michigan law were violated during his criminal proceedings. It is well-settled, however, that habeas relief does not lie for perceived errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Consequently, to the extent that Petitioner alleges violations of state law or contests the state courts' application or interpretation of state law, he fails to state a claim upon which federal habeas relief may be granted. Habeas relief is thus not warranted on any such claims.

### V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  Petitioner makes no such showing.  Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a).  Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.  This case is closed.

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  May 2, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 2, 2023, by electronic and/or ordinary mail.

s/J. McCoy
Case Manager